IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARQUETTE HANDY,

    Plaintiff,                    No. CIV S-08-2765 LKK DAD P

    vs.

DEBRINA WILLIAMS, et al.,

    Defendants.               <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. This matter is before the court on a motion for summary judgment brought on behalf of defendant Williams pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed an opposition to the motion, and defendant has filed a reply. Plaintiff has also filed an unauthorized response to defendant Williams' reply. <u>See</u> Local Rule 230(l).

**BACKGROUND**

        Plaintiff is proceeding on an amended complaint against defendant Williams. Therein, he alleges as follows. On September 7, 2007, defendant Williams, a nurse practitioner, removed plaintiff from the Outpatient Housing Unit ("OHU") at California Medical Facility ("CMF") without a physician's evaluation. According to plaintiff, Williams' decision to move

1

him to a non-medical unit and to take his oxygen therapy resulted in his near-death respiratory failure on October 16, 2007.  Plaintiff claims that defendant Williams has been deliberately indifferent to his medical needs in violation of the Eighth Amendment.  In terms of relief, plaintiff requests declaratory relief, injunctive relief, and damages.  (Compl. Attach. at 1-17.)

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

       In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

       In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**OTHER APPLICABLE LEGAL STANDARDS**

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II. The Eighth Amendment and Inadequate Medical Care

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986);

4

Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

Where a prisoner's Eighth Amendment claims arise in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere

'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

      Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). See also McGuckin, 974 F.2d at 1060.

      Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**DEFENDANT WILLIAMS' MOTION FOR SUMMARY JUDGMENT**

I. Defendant Williams' Statement of Undisputed Facts and Evidence

      Defendant Williams' statement of undisputed facts is supported by citations to declarations signed under penalty of perjury by the defendant, Dr. Raymond Andreasen, and Dr.

6

Francis Healy. It is also supported by citations to plaintiff's deposition transcript.

The evidence submitted by defendant establishes the following. Defendant Williams is a nurse practitioner licensed by the State of California and in good standing with the Board of Nurse Practitioners. She graduated from the U.C. Davis Medical School Nurse Practitioners program in 1995. At all times relevant to this action, she was an employee of the California Department of Corrections and Rehabilitation and working at CMF as a licensed nurse practitioner. (Def.'s SUDF 1-3, Williams Decl.)

CMF's OHU, units G-3 and H-1, provides 24-hour nursing care to inmate patients. In September 2007, defendant Williams worked in OHU where plaintiff was housed. Placement criteria in OHU includes: (1) patient does not require hospice, CTC, GACH, or Community Hospital; (2) patient requires daily access to nursing staff; (3) convalescence from recent surgery or illness; (4) patient has a cast and needs assistance with daily living; (5) temporary dietary restrictions or special diet; (6) preparation for special procedures; (7) mild dementia, mild organic brain syndrome, or requires supervision because of memory loss; (8) loss of bowel or bladder function, (9) neuromuscular disorders that require assistance with activities of daily living; (10) patients who require PRN oxygen administration or breathing aids (patients can now be on the mainline with oxygen concentrators and get breathing treatments in the B-1 clinic). Placement in OHU is subject to a medical doctor or nurse practitioner's judgment. (Def.'s SUDF 5-7, 9, Williams Decl., Andreasen Decl., Pl.'s Dep.)

As part of her duties, defendant Williams evaluated plaintiff on September 6, 2007. At that time, plaintiff's primary diagnosis was chronic obstructive pulmonary disease, steroid dependent asthma, steroid induced diverticular disease, subsequent colostomy, and history of deep vein thrombosis. Plaintiff's secondary diagnosis was Coumadin therapy, osteoporosis of the lumbar spine, spontaneous pnuemothorax 1990, obesity, and sleep apnea. Upon examination, defendant Williams noted that plaintiff's lungs had no rails, wheezes, or rhonchi. Plaintiff's heart rate and rhythm were normal. Plaintiff's oxygen saturation was 99%

on room air. (Def.'s SUDF 12-17, Williams Decl., Andreasen Decl.)

Based on her examination, defendant Williams' assessment/diagnosis included bullous emphysema which is stable, chronic asthma with no acute exacerbation and that plaintiff remains on prednisone for asthma, colostomy, hypertension which is stable, sleep apnea, and history of deep vein thrombosis. Based on that assessment, defendant Williams recommended the following treatment plan for plaintiff: follow-up with chest x-ray for bullous lung disease, continue steroids on current dosage, follow-up with gastrointestinal to consider colostomy revision, continue current medications for hypertension, follow-up Coumadin clinic, order lab tests, discontinue supplemental oxygen because plaintiff did not use it and clinically did not need it. (Def.'s SUDF 18-19, Williams Decl., Andreasen Decl.)

Based on defendant Williams' examination and assessment of plaintiff, she discharged plaintiff from OHU back to the mainline because he did not meet the criteria for remaining in OHU. Dr. Andreasen, defendant Williams' supervisor and Chief Medical Officer of outpatient services at CMF, agreed with defendant Williams' diagnosis, recommendations and discharge instructions for plaintiff. According to defendant Williams, at no time did she prevent plaintiff from receiving medical care he needed, and at no time did she disregard a serious risk to his health and safety. (Def.'s SUDF 4, 20-23, Williams Decl., Andreasen Decl.)

On September 25, 2007, plaintiff saw Dr. Healy at Queen of the Valley Hospital for a pulmonary consultation. Dr. Healy did not place plaintiff on supplemental oxygen and did not recommend that plaintiff return to OHU. In fact, Dr. Healy noted that plaintiff's medical program is "quite good and very appropriate." (Def.'s SUDF 24-27, Williams Decl., Andreasen Decl., Healy Decl.)

On October 16, 2007, plaintiff was transferred to Vaca Valley Hospital for respiratory failure due to asthma exacerbation. Asthma is not treated with oxygen, so discontinuation of plaintiff's supplemental oxygen had no medical correlation to his respiratory failure. Plaintiff received treatment for respiratory failure with I.V. antibiotics and increased

1 steroids. (Def.'s SUDF 28-30, Williams Decl., Andreasen Decl.)

2 When plaintiff returned to CMF on October 22, 2007, he was placed in G-1, an acute care housing unit. Plaintiff's respiratory status remained stable with a taper of prednisone. An examination on October 29, 2007, showed plaintiff's oxygen saturation level was 99-100% without oxygen. At that time, plaintiff was able to ambulate in the halls without shortness of breath. Plaintiff's asthma exacerbation was likely due to allergies. Plaintiff was discharged back to the mainline on October 29, 2007. There is no medical evidence that plaintiff suffered harm because of his discharge from OHU or because his supplemental oxygen was discontinued on September 7, 2007. (Def.'s SUDF 31-38, Williams Decl., Andreasen Decl., Healy Decl.)

II. <u>Defendant Williams' Arguments</u>

Defense counsel argues that defendant Williams is entitled to summary judgment in her favor on plaintiff's Eighth Amendment claims because there is no evidence before the court indicating that she was deliberately indifferent to plaintiff's medical needs. Specifically, counsel contends that plaintiff was discharged from the OHU because he did not meet the criteria for continued placement there. For example, counsel notes that plaintiff did not need supplemental oxygen. In fact, counsel argues, when Dr. Healy saw plaintiff for a pulmonary consultation after his discharge from OHU, he did not prescribe plaintiff supplemental oxygen. (Def.'s Mem. of P. & A. at 5-6.)

In addition, counsel argues that plaintiff's subsequent respiratory failure due to asthma exacerbation was not caused by his discharge from OHU or discontinuation of his supplemental oxygen. Counsel notes that asthma is not treated with oxygen. In this regard, counsel contends that there is therefore no correlation between plaintiff's discontinuation of supplemental oxygen on September 7, 2007, and his respiratory failure on October 16, 2007. (Def.'s Mem. of P. & A. at 5-6.)

Finally, counsel argues that the evidence in this case establishes that defendant Williams provided plaintiff with the appropriate medical care and diagnosis and did not cause

him any harm. Counsel emphasizes that plaintiff's mere disagreement with a diagnosis or treatment does not support a claim of deliberate indifference. Moreover, according to defense counsel, there is no evidence that defendant Williams knew of or disregarded a serious risk to plaintiff's health or safety. (Def.'s Mem. of P. & A. at 5-7.)

III. Plaintiff's Opposition

Plaintiff's opposition to defendant's motion for summary judgment is supported by a declaration signed under penalty of perjury by plaintiff and by copies of his medical records. Plaintiff has also submitted a response to defendant Williams' statement of undisputed facts.

Plaintiff argues that there is sufficient evidence to support a finding that defendant Williams was deliberately indifferent to his serious medical needs. By way of background, plaintiff explains that he was transferred from Corcoran State Prison to CMF on September 23, 2006, due to a severe respiratory condition as well as other medical issues. His primary diagnosis was chronic obstructive pulmonary disease. At CMF, Dr. Andreasen approved him for placement in OHU. (Pl.'s Mem. of P. & A. at 1-2, Ex. A., Pl.'s Decl.)

On September 6, 2007, defendant Williams evaluated plaintiff and recommended discharging him from OHU. On September 25, 2007, plaintiff saw Dr. Healy. According to Dr. Healy's medical report, plaintiff has a respiratory history with poor exercise tolerance and oxygen desaturation at night. According to plaintiff, the issue of supplemental oxygen came up during his appointment, and Dr. Healy said that oxygen would be appropriate if there was a demonstration of hypoxemia with exercise or sleep. (Pl.'s Mem. of P. & A. at 2, Ex. C., Pl.'s Decl.)

On October 16, 2007, plaintiff was transferred to Vaca Valley Hospital due to near-death respiratory failure. Plaintiff was intubated for two days. On October 22, 2007, plaintiff returned to CMF and was placed in the acute care unit where he continued to receive oxygen. On April 14, 2008, plaintiff saw Dr. Nachtwey who diagnosed him as suffering with chronic obstructive pulmonary disease and ordered PRN oxygen due to oxygen desaturation

during exercise. According to plaintiff, this course of events demonstrates that he suffered harm as a result of defendant Williams' decision to discharge him from OHU. (Pl.'s Mem. of P. & A. at 2-4, Pl.'s Decl.)

IV. Defendant Williams' Reply

In reply, defense counsel argues that the undisputed evidence in this case demonstrates that defendant Williams was not deliberately indifferent to plaintiff's medical needs. Defense counsel reiterates that defendant Williams discharged plaintiff from OHU because he did not meet its placement criteria. Dr. Andreasen agreed with that assessment and when plaintiff subsequently saw Dr. Healy, he too did not recommend that plaintiff return to OHU. Counsel contends that plaintiff's declaration in which he states that he believes he needed to remain in the OHU and that his respiratory failure on October 16, 2007, was caused by defendant Williams' decision to discharge him from the OHU, does not create a triable issue of fact because plaintiff has no medical training and there is no medical evidence before the court supporting plaintiff's beliefs. Moreover, plaintiff's mere disagreement with a diagnosis or treatment does not create a triable issue of fact under § 1983. Finally, counsel reiterates that plaintiff's respiratory failure on October 16, 2007, was caused by asthma exacerbated by allergies and that he received treatment in the form of intravenous antibiotics and steroids. Because asthma is not treated with oxygen, the discontinuation of supplemental oxygen has no medical correlation to plaintiff's respiratory failure. (Def.'s Reply at 1-4.)

**ANALYSIS**

I. Plaintiff's Serious Medical Needs

The parties do not dispute, and undersigned finds, that based upon the evidence presented by the parties in connection with the pending motion a reasonable juror could conclude that plaintiff's respiratory condition constitutes an objective, serious medical need. See McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition

that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."); see also Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the Eighth Amendment duty to provide medical care applies "to medical conditions that may result in pain and suffering which serve no legitimate penological purpose."). Specifically, plaintiff's largely undisputed medical history, as well as the observations and treatment recommendations by the defendant, Dr. Andreasen, and Dr. Healy, compel the conclusion that plaintiff's medical condition, if left untreated, could result in "further significant injury" and the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059. Accordingly, defendant Williams' motion for summary judgment hinges on whether, based upon the evidence now before the court, a rationale jury could conclude that the defendant responded to plaintiff's serious medical needs with deliberate indifference. Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106.

II. Defendant Williams' Response to Plaintiff's Serious Medical Needs

The court finds that defendant Williams has borne her initial responsibility of demonstrating that there is no genuine issue of material fact with respect to the adequacy of the medical care provided to plaintiff. Specifically, defendant's evidence demonstrates that placement in the OHU is subject to a medical doctor or nurse practitioner's judgment. In the course of performing her duties, defendant Williams evaluated plaintiff on September 6, 2007. At the time, plaintiff's primary diagnoses included chronic obstructive pulmonary disease and steroid dependent asthma. However, plaintiff also reported at that time that he rarely if ever used his supplemental oxygen. He also reported no shortness of breath on exertion, and the defendant and staff observed plaintiff walk the mainline daily without any report of respiratory distress. Upon examination, defendant Williams noted that plaintiff's lungs had no rails, wheezes, or rhonchi. Plaintiff's heart rate and rhythm were normal. Plaintiff's oxygen saturation was 99% on room air. (Williams Decl., Andreasen Decl.)

/////

Based on her examination, defendant Williams recommended a follow-up treatment plan for plaintiff and discharged him from the OHU back to the mainline because he did not meet the criteria for remaining in the OHU. Dr. Andreasen, defendant Williams' supervisor and Chief Medical Officer of outpatient services at CMF, agreed with defendant Williams' diagnosis and recommendations and discharge instructions for plaintiff. In addition, Dr. Healy saw plaintiff at Queen of the Valley Hospital on September 25, 2007, for a pulmonary consultation and noted that plaintiff's medical program was "quite good and very appropriate." Notably, he did not place plaintiff on supplemental oxygen and did not recommend that plaintiff return to the OHU. In Dr. Healy's view, defendant Williams' assessment was proper and the treatment recommended for plaintiff was appropriate. (Williams Decl., Andreason Decl., Healy Decl.)

On October 16, 2007, plaintiff was transferred to Vaca Valley Hospital for respiratory failure due to asthma exacerbation probably as a result of allergies. Asthma is not treated with oxygen, so discontinuation of plaintiff's supplemental oxygen in the OHU had no medical correlation to his respiratory failure. In fact, plaintiff received treatment for his respiratory failure with intravenous antibiotics and increased steroids. When plaintiff returned to CMF on October 22, 2007, he was placed in G-1, an acute care housing unit. Plaintiff's respiratory status remained stable with a taper of prednisone. On October 29, 2007, plaintiff's oxygen saturation level was 99-100% without supplemental oxygen. At that time, plaintiff was able to ambulate in the halls without shortness of breath and was discharged back to the mainline. (Williams Decl., Andreason Decl.) Given this evidence, the burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his deliberate indifference claim.

On defendant's motion for summary judgment, the court is required to believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in plaintiff's favor. Drawing all reasonable inferences in plaintiff's favor, the court finds that

plaintiff has not submitted sufficient evidence to create a genuine issue of material fact with respect to his claim that defendant Williams responded to his serious medical need with deliberate indifference.  See Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106.  Specifically, plaintiff claims that defendant Williams was deliberately indifferent to his medical needs because she discharged him from the OHU and discontinued his supplemental oxygen.  However, as discussed above, a mere difference of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of medical care does not give rise to a cognizable §1983 claim.  Jackson, 90 F.3d at 332; Sanchez, 891 F.2d at 242; Franklin, 662 F.2d at 1344; see also Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

        Here, plaintiff has provided no evidence to demonstrate that the course of treatment the defendant chose was medically unacceptable under the circumstances.  At most, plaintiff has submitted a copy of a chrono dated back on April 13, 2005, from Dr. Greenman, Chief Medical Officer at California Substance Abuse Treatment Facility, recommending that plaintiff be "permanently" housed in a correctional treatment center or outpatient housing unit due to his risk of respiratory compromise.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. A.)  Presumably, Dr. Greenman's chrono was based on events or an examination of plaintiff in 2005.  On September 23, 2006, more than a year after Dr. Greenman issued the chrono, plaintiff transferred to CMF.  Consistent with the chrono, Dr. Andreasen placed plaintiff in CMF's OHU.  That defendant Williams determined yet another year later in 2007 that plaintiff no longer needed to be housed in CMF's OHU based on an examination at that time does not automatically render her care medically unacceptable.  See Sanchez, 891 F.2d at 242.  Plaintiff has provided no evidence to indicate that he still needed to be housed in the OHU or that he met the criteria to remain in the OHU when defendant Williams discharged him back to the mainline in 2007.

It is undisputed that plaintiff suffered respiratory failure on October 16, 2007, and was transferred to Vaca Valley Hospital where he was intubated for two days. However, plaintiff has provided no evidence demonstrating that his respiratory failure was caused by defendant Williams' decision to discharge him from the OHU and to discontinue his supplemental oxygen. In fact, plaintiff's own evidence indicates that his respiratory failure was caused by asthma exacerbation and that he was treated with intravenous antibiotics and increased steroids. (Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. G.) In this regard, plaintiff has not demonstrated that he suffered any harm because of defendant Williams' decision on September 7, 2007, to discharge him from the OHU and discontinue his supplemental oxygen.

Finally, plaintiff has provided no evidence to show that defendant Williams chose the particular course of treatment at issue in this action in conscious disregard of an excessive risk to plaintiff's health. At most, defendant Williams' decision to discharge plaintiff from the OHU constituted neglect or medical malpractice. See, e.g., McGuckin, 974 F.2d at 1060 ("A finding that the defendant's neglect was an 'isolated occurrence' or an 'isolated exception,' . . . militates against a finding of deliberate indifference"). Moreover, although plaintiff declares under penalty of perjury that one Dr. Nachtwey subsequently diagnosed him with chronic obstructive pulmonary disease and ordered PRN oxygen for him due to desaturation during exercise in April 2008, Dr. Nachtwey's chosen course of treatment for plaintiff in April 2008 does not demonstrate that defendant Williams' chosen course of treatment back in September 2007 was medically unacceptable or amounted to deliberate indifference to plaintiff's serious medical needs. Accordingly, the court concludes that defendant Williams is entitled to summary judgment in her favor on plaintiff's Eighth Amendment claim.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Williams' January 26, 2010 motion for summary judgment (Doc. No. 36) be granted; and

1      2. This action be closed.

2      These findings and recommendations are submitted to the United States District
3 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-
4 one days after being served with these findings and recommendations, any party may file written
5 objections with the court and serve a copy on all parties.  Such a document should be captioned
6 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
7 shall be served and filed within fourteen days after service of the objections.  The parties are
8 advised that failure to file objections within the specified time may waive the right to appeal the
9 District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

10 DATED: April 8, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

13 DAD:9
hand2765.57